UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MARSHALL JUSTICE,

    Plaintiff,

v.                                    Civil Action No. 2:14-14438

MINE SAFETY AND HEALTH
ADMINISTRATION,

    Defendant.


<u>MEMORANDUM OPINION & ORDER</u>


      Pending are cross motions for summary judgment filed
on March 2, 2015 and March 16, 2015, respectively; also pending
is the plaintiff's motion to amend the complaint, filed March
12, 2015.

I. Factual and Procedural Background

      The plaintiff, Marshall Justice, is a coal miner from
Madison, West Virginia.  He is employed by the Gateway Eagle
Coal Company ("Gateway"), and serves as a "miner's
representative."  On November 4, 2013, he filed an
administrative complaint (the "MSHA Complaint") with the
defendant, the Mine Safety and Health Administration ("MSHA"),
alleging that he had been improperly treated by Gateway in

violation of the Mine Safety and Health Act, 30 U.S.C. §§ 801-966 (2012) (the "Mine Act").

Justice complained that, while working at the Farley Eagle Mine on October 24, 2013, Gateway officials insulted him, disparaged his religion, and also prevented him from speaking with two MSHA inspectors who were on site conducting safety checks.  Gateway intimated that Justice's MSHA Complaint was an unfounded diversion; an attempt to prevent the company from taking adverse action against him for excessive absenteeism.  In any event, MSHA opened a case and assigned two investigators to look into Justice's claim.  During the course of their work, the investigators interviewed the Gateway officials who allegedly ridiculed and interfered with Justice on October 24th.  Justice believes the investigators also interviewed the MSHA inspectors, each of whom allegedly witnessed the heated exchange between Justice and the Gateway officials.

At the conclusion of its investigation, MSHA determined that Gateway had not violated the Mine Act and therefore declined to issue a violation.  Not satisfied, Justice elected to exercise his statutory right to pursue his MSHA Complaint on his own before the Federal Mine Safety and Health Review Commission (the "Commission").  See 30 U.S.C. § 815(c)(3) ("If the Secretary, upon investigation determines that the

2

provisions of this subsection have not been violated, the complainant shall have the right, within 30 days of notice of the Secretary's determination, to file an action in his own behalf before the Commission[.]").

Perhaps anticipating that he would have to make his own case before the Commission, Justice, by counsel, made a request to MSHA under the Freedom of Information Act ("FOIA") for all non-privileged portions of the completed investigative file relating to his MSHA Complaint.  He made his request on December 5, 2013, twenty-five days before MSHA completed its investigation on December 30, 2013.

By letter dated January 24, 2014, MSHA acknowledged Justice's FOIA request for the investigative file.  According to the letter, there were "unusual circumstances surrounding the records [Justice was] seeking," and "a need to search for and collect records from separate offices."  As a result, the defendant stated that the twenty-day "statutory time limits for processing [the] request [could not] be met," and estimated that it would take ninety working days to provide a response.  By April 10, 2014, Justice had not received the requested documents, so he filed this lawsuit on that day.

Justice's complaint included two counts.  Count I straightforwardly alleged that MSHA had violated FOIA by not releasing the requested documents and sought disclosure of those documents.  Count II requested a declaratory judgment that MSHA

> is in violation of FOIA and frustrates miners' rights to pursue health and safety related complaints under [the Mine Act], and that consequently [MSHA] is required [to] provide all documents and materials relevant to a miner's complaint promptly upon the miner's request, and at most within the statutory period of 20 working days, to enable miners to meaningfully pursue their complaints concerning unlawful retaliatory violations of the Mine Act.

Compl. ¶ 25(a).

Two significant developments followed.  First, MSHA responded to the plaintiff's FOIA request on May 2, 2014.  Of the 112-page investigative file, the agency released 45 pages in their entirety, released 26 additional pages with some redactions, and withheld the remaining 41 pages completely. Later, on December 16, 2014, MSHA released eleven more pages that the agency had previously withheld.  MSHA released six of those pages in their entirety, and released another five with some redactions.  In doing so, MSHA explained that it had evaluated its policies, determined that those eleven pages had been improperly withheld, and updated its policy to correct the error.

Second, MSHA moved to dismiss Count II inasmuch as it seemed to request potentially unbounded relief on behalf of any miner who might at some point present a FOIA request to the agency.  In response, Justice clarified that, notwithstanding its broad wording, Count II sought only "a declaratory judgment that . . . [p]laintiff has a right under [FOIA] . . . to access certain records of the government's investigation into the discrimination complaint that [p]laintiff filed with [MSHA.]"  See Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss Count II ("Pl.'s Opp'n") at 1.

Notwithstanding Justice's assurances about the limited scope of Count II, there were some indications that perhaps he intended to plead a claim of a different character.  His response to MSHA's motion to dismiss alleged, for example, that he had "requested safety-related information under FOIA at other times," that he "continue[d] to work in the mining industry," that "he maintain[ed] an acute and ongoing interest in exercising his whistleblower rights," and that he "therefore [sought] declaratory judgment to clarify his right to receive timely, adequate responses to his FOIA requests relating to his whistleblower complaints under the Mine Act."  Pl.'s Opp'n at 3 (emphases added).

5

But those allegations -- specifically those concerning multiple and anticipated future FOIA requests -- were not found in the complaint.  And, in any event, Justice's stray comments regarding multiple "requests" and "complaints" were in direct conflict with his more narrow assertion, noted above, that he was pursuing his right "to access certain records of the government's <u>investigation</u> into the discrimination <u>complaint</u> that [p]laintiff filed with [MSHA.]"  Pl.'s Opp'n at 1 (emphases added).  As a result, the court declined to read Count II as a generalized challenge to MSHA's FOIA-response policy.  <u>See</u> Order herein of January 23, 2015 at n.4.  Instead, the court understood Count I and Count II as separate vehicles seeking identical relief:  Count I alleged that MSHA violated FOIA by failing to respond adequately to Justice's request and sought release of the requested documents; Count II sought a declaration confirming those allegations and directing that result.  <u>See</u> Order herein of January 23, 2015.

On the basis of that limitation -- that is, that Justice was seeking relief related to his own FOIA request, and not challenging MSHA's responses to some unascertainable number of other miners' FOIA requests -- the court denied MSHA's motion to dismiss as premature.  The court also set a schedule for the

production of a Vaughn index and the filing of cross-motions for summary judgment.

MSHA filed its Vaughn index on February 13, 2015 and its motion for summary judgment on March 2, 2015.  Justice filed his cross-motion on March 16, 2015.  In the interim, on March 12, Justice separately moved to amend the complaint.

## II. Motion to Amend

According to the plaintiff, the purpose of the proposed amendment is to clarify that he is still employed as a miner, that he still acts as a safety advocate, and "that he does have an ongoing interest in [MSHA's] policy and practices[.]"  The proposed amended complaint attached to the motion does so specifically by alleging that: Justice is an employee of the Gateway Eagle Coal Company; Justice serves as a miners' representative, regularly participates in inspections conducted by MSHA, occasionally files safety complaints with MSHA, and routinely requests and reviews documents from MSHA; and Justice intends to "continue serving as a safety and health advocate in the coal mines."  The amended complaint also asserts, with respect to Count II, that "[i]mproper FOIA policy and practices of MSHA will impair [Justice's] access to

7

information in the future, when he makes other FOIA requests in furtherance of exercising his whistleblower rights under the Mine Act."

All of that seems designed to support Count II's prayer for relief, which remains essentially unchanged from the original complaint. It seeks:

> a declaration that [MSHA's] conduct is in violation of FOIA and frustrates the rights of miners -- and specifically the rights of Plaintiff -- to pursue health and safety related complaints under . . . the Mine Act, and that consequently [MSHA] is required [*sic*] provide all documents and materials relevant to a miner's complaint promptly upon the miner's request, and at most within the statutory period of 20 working days, to enable a miner, and specifically, the Plaintiff, to meaningfully pursue his complaints concerning unlawful retaliatory violations of the Mine Act.

In other words, it now appears that Justice wants to allege something resembling a "facial" challenge to MSHA's FOIA policy in general, rather than the "as-applied" challenge he seemed to embrace in his response to MSHA's motion to dismiss. See Pl.'s Opp'n at 1 ("Plaintiff has a right under [FOIA] . . . to access certain records of the government's investigation into the discrimination complaint that [p]laintiff filed with [MSHA.]"). MSHA opposes the motion.

8

A.

Federal Rule of Civil Procedure 15(a)(2) provides that a party who can no longer amend a pleading as of right can still amend by obtaining "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. In applying Rule 15(a), "[t]he law is well settled that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). A proposed amendment is futile "if . . . [it] fails to satisfy the requirements of the federal rules," such as Rule 12(b)(6). United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted).

The flexibility of the "freely give leave" standard is diminished somewhat when the amendment is sought after expiration of the deadline, if any, for amended pleadings set by a Rule 16(b) scheduling order. Rule 16(b) provides that "a schedule shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P.

9

16(b). Thus, "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008); see also Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.").

"Good cause" under Rule 16(b) is measured by the movant's diligence in attempting to meet the scheduling order's requirements. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 243 (2d Cir. 2007); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992). "Another important consideration for a district court deciding whether Rule 16's 'good cause' standard is met is whether the opposing party will suffer prejudice by virtue of the amendment." Leary v. Daeschner, 349 F.3d 888, 906 (6th Cir. 2003). Nevertheless, "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not

10

diligent, the inquiry should end." <u>Johnson</u>, 975 F.2d at 609
(citations omitted).

B.

The provenance of Count II of the plaintiff's
complaint has been dubious from the start.  As MSHA noted in its
motion to dismiss, the Count as originally pled seemed to
request prospective relief arising out of hypothetical disputes
on behalf of some unascertainable number of non-parties.  MSHA
also argued, and the court observed in a prior order, that
declaratory relief of the nature sought in Count II is almost
always unavailable in cases involving FOIA requests.  The rare
exception, noted both by MSHA and by the court, involves the
narrow set of circumstances where an agency has adopted a policy
that violates the FOIA, and where it is all but certain that the
plaintiff will suffer the ill-effects of that policy again in
the future.

Some aspects of the plaintiff's response to the motion
to dismiss suggested he was trying to advance a claim of that
nature, but the factual predicate needed to do so was not laid
in the original complaint.  The motion to amend is clearly
intended to correct that.  But it's too late and, as it turns
out, it's too little as well.

11

1.

The court's scheduling order set a deadline of October 10, 2014 for amending the pleadings.[1]  Justice waited nearly five months to the day after that to move to amend.  There is no reason he was unable to do so sooner.  MSHA's motion to dismiss Count II specifically pointed up a number of problems with that cause of action as initially pled.  Justice's response, as noted, purported to limit the scope of Count II in order to address MSHA's concerns.  It simultaneously mentioned some new facts -- the same type of new facts included in the proposed amended complaint -- that hinted at a different conception of Count II.  Justice filed that response on August 14, 2014, almost two months before the deadline for amending the pleadings (in fact, before the court had even entered its scheduling order).  In other words, Justice knew as far back as August of 2014 what he wants to assert by amendment now -- namely, that he had an ongoing interest in filing FOIA requests with MSHA and reason to believe those requests would not be properly addressed.  By any measure, waiting five months to propose the amendment does not reflect the kind of diligence necessary to satisfy Rule 16's good cause requirement.

_____

[1] The court subsequently vacated that order following the submission of the parties' motions for summary judgment, but it remained in force when Justice moved to amend.

Even assuming Justice wasn't on notice of the need to tighten up the complaint until the court's ruling on MSHA's motion to dismiss, he still waited nearly two months to move to amend.  And what's more, he waited until MSHA -- believing the case would move forward on a more limited construction of Count II -- had produced its <u>Vaughn</u> index and filed its motion for summary judgment.  Notwithstanding Justice's wholly unexplained delay, forcing MSHA to reassess the case and revise its motion for summary judgment would be prejudicial.  Accordingly, Justice has not shown good cause under Rule 16.

2.

Even under Rule 15's more permissive standard, leave to amend is still not warranted because Justice's proposed Count II is futile.

The allegations in the proposed amended complaint, if accepted as true, establish that Justice is a miner and a miners' advocate, that he plans to file future FOIA requests with MSHA, and that MSHA has developed a pattern and practice of "unreasonably delaying the production of the administrative record in response to requests" -- (presumably FOIA requests, but Justice does not say so) -- "by anti-retaliation complainants[.]"  To remedy this allegedly improper pattern and

13

practice, Justice asks for a declaration that MSHA must "provide all documents and materials relevant to a miner's complaint promptly upon the miner's request, and at most within the statutory period of 20 working days[.]"

FOIA requires an agency to "determine within 20 [business] days . . . after the receipt of a [FOIA] request whether to comply with such request[.]" 5 U.S.C. § 552(a)(6)(A)(i). Nothing in that language requires an agency to disclose all of the requested documents within 20 days, as Justice would have it. As one court of appeals recently explained, "a 'determination' does not require actual <u>production</u> of the records to the requester at the exact same time that the 'determination' is communicated to the requester. Under the statutory scheme, a distinction exists between a 'determination' and subsequent production." <u>Citizens for Responsibility & Ethics in Washington v. FEC</u>, 711 F.3d 180, 185-89 (D.C. Cir. 2013) (emphasis in the original). Of course, agencies are still obligated under FOIA to produce the requested documents "promptly" after making a determination about the appropriate scope of the response. <u>Id.</u> at 188 (citing 5 U.S.C. § 552(a)(3)(A) and (a)(6)(C)(i)). But nothing in FOIA absolutely requires an agency to "provide all documents and materials relevant to a" request "at most within" 20 days, and there is,

14

as a result, no basis in that statute to declare that MSHA is required to do so.

In sum, even if Justice ultimately proves all of the facts alleged in his proposed amended complaint, he would not be entitled to the declaratory relief he seeks.  Count II of the proposed amended complaint is futile; it is accordingly ORDERED that the plaintiff's motion to amend be, and hereby is, denied.

### III. Motions for Summary Judgment

The lone remaining issue presented by the plaintiff's complaint and contested in the cross motions for summary judgment is whether MSHA adequately responded to Justice's FOIA request.

### A.

FOIA was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny[.]"  Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976).  The statute requires an "agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules," to "make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).

That statutory command is not, however, absolute. FOIA contains "nine discrete exemptions[] which allow an agency to withhold certain categories of information[.]" Keeper of the Mountains Foundation v. U.S. Dep't of Justice, 514 F. Supp. 2d 837, 846 (S.D. W. Va. 2007) (citing 5 U.S.C. § 552(b)).

If a member of the requesting public believes an agency has withheld information, he or she may sue and the court may in turn order the production of records deemed improperly withheld. See 5 U.S.C. § 552(a)(4)(B). Such cases are typically and properly decided on motions for summary judgment, Hanson v. USAID, 372 F.3d 286, 290 (4th Cir. 2004), provided there is no dispute of material fact and the moving party shows it is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a).

The agency bears "the burden of justifying nondisclosure, [] the court reviews the agency's action de novo," Keeper of the Mountains, 514 F. Supp. 2d at 846 (citing 5 U.S.C. § 552(a)(4)(B)), and "FOIA exemptions should be narrowly construed to favor disclosure," Hanson, 372 F.3d at 290. The agency may carry its burden by providing (and the court may grant summary judgment after reviewing) affidavits and declarations "describing the withheld material with reasonable specificity and explaining" the applicability of an enumerated

16

exception.  <u>Hanson</u>, 372 F.3d at 290.  On the other hand,

"'[c]onclusory assertions of privilege will not suffice[.]'"

<u>Rein v. U.S. Patent & Trademark Office</u>, 553 F.3d 353, 368 (4th

Cir. 2009) (quoting <u>Coastal States Gas Corp. v. Dep't of Energy</u>,

617 F.2d 854, 861 (D.C. Cir. 1980) (alteration in the

original)).  If the agency's affidavits and declarations are

appropriately detailed, they are entitled to "a presumption of

good faith[] which cannot be rebutted by purely speculative

claims about the existence and discoverability of other

documents."  <u>SafeCard Servs., Inc. v. SEC</u>, 926 F.2d 1197, 1200

(D.C. Cir. 1991) (internal quotation marks and citation

omitted).

B.

        Justice requested all non-privileged portions of the

completed investigative file relating to his MSHA Complaint.  In

his complaint, he alleges that MSHA failed to "respond

substantively" to that request and failed to "release the

requested records in a timely manner."  MSHA has now released 51

pages of Justice's file without excision, released another 31

partially redacted pages, and withheld the remaining 30 pages,

so the proper inquiry now does not concern the timing of the

agency's response but rather the propriety of its withholdings.

<u>Cf.</u> <u>Payne Enters., Inc. v. United States</u>, 837 F.2d 486, 490–91

17

(D.C. Cir. 1988) ("[H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform with respect to the particular records that were requested." (internal quotation marks and citation omitted)).

As to the substance, documents in Justice's 112-page investigative file include, among other things, correspondence between MSHA and Justice and between MSHA and Gateway, internal agency memoranda describing the investigation into Justice's MSHA complaint, and Memorandums of Interviews ("MOIs") memorializing investigative interviews with Justice, several Gateway officials, and unnamed "MSHA inspectors".  Fifty-one pages of those records have been released without excision.  Of the remaining sixty-one pages, the agency has partially redacted thirty-one and withheld an additional thirty pages completely.

Four of the pages completely withheld by the agency, MSHA000090 through MSHA000093, are described in the Vaughn index as "Memoranda of Interview of MSHA inspectors by MSHA Section 105(c) complaint investigator, conducted in December of 2013." The parties' briefs make clear that it is only MSHA's continued withholding of those four pages that remains in dispute.  See Plaintiff's Memorandum of Law in Support of Plaintiff's Motion

for Partial Summary Judgment ("Pl.'s Mem.") at 6 ("As to Count
I, Plaintiff seeks to clarify an outstanding dispute regarding
two critical documents that Defendant continues to withhold.");
Defendant's Reply in Support of its Motion for Summary Judgment
and in Opposition to Plaintiff's Motion for Partial Summary
Judgment ("Def.'s Resp.") at 1 ("The Plaintiff's Memorandum
indicates that the only two documents remaining in controversy
are the two Memoranda of Interview ("MOI") taken from 'two MSHA
inspectors who happened to be present at the time that the
allegedly discriminatory conduct occurred.' (quoting Pl.'s Mem.
at 3)).

        MSHA maintains that it properly withheld the MOIs with
the unnamed "MSHA inspectors" under Exemptions 5 and 7(C) in
keeping with its "longstanding practice of withholding special
investigation statements taken from inspectors[.]"  Justice
assumes those inspectors are the two MSHA inspectors present at
the Farley Eagle Mine on October 24, 2013.  He maintains that
summary judgment is inappropriate at this stage because there is
a genuine dispute over whether MSHA improperly failed to release
segregable, factual information in the MOIs describing the
events of October 24th.[2]

---

[2] Justice elsewhere argues that he is entitled to "partial
summary judgment" because MSHA released on December 16, 2014
MOIs with Gateway officials which it previously withheld

1. Exemption 5

"Exemption 5 permits an agency to withhold 'inter-
agency or intra-agency memorandums or letters which would not be
available by law to a party other than an agency in litigation
with the agency.'" Rein, 553 F.3d at 365-66 (quoting 5 U.S.C. §
552(b)(5)). "Among the privileges Exemption 5 encompasses are
the attorney-client privilege, the attorney-work product
privilege, and the deliberative process privilege." Id. at 371.

To properly withhold documents under Exemption 5's
deliberative process privilege, as MSHA purports to do here, the
agency must show that the records are "predecisional" and
"deliberative." Id. at 372. That is, the relevant materials
must have been "prepared in order to assist an agency
decisionmaker in arriving at his decision," Renegotiation Bd. v.
Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975), and must

_____

entirely from its May 2, 2014 response. As Justice sees it, the
subsequent release of those materials is tantamount to admission
by MSHA "of the wrongfulness of its initial FOIA response[.]"
Pl.'s Mem. at 6-7. FOIA vests courts with "jurisdiction to
enjoin the agency from withholding records and to order the
production of any agency records improperly withheld." 5 U.S.C.
§ 552(a)(4)(B). As a result, once MSHA released the records in
its December 16, 2014 supplemental response, any dispute over
the agency's initial decision to withhold those documents became
moot. See Regional Mgmt. Corp., Inc. v. Legal Servs. Corp., 186
F.3d 457, 465 (4th Cir. 1999) ("It is undisputed that a
challenge to a particular denial of a FOIA request becomes moot
if an agency produces the requested documents." citing Payne
Enters., 837 F.2d at 491-94)

20

"reflect[] the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes, <u>City of Va. Beach v. U.S. Dep't of Commerce</u>, 995 F.2d 1247, 1253 (4th Cir. 1993) (internal quotation marks and citation omitted).

Moreover, "[b]ecause the FOIA focuses on information rather than documents, '[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt[.]'" <u>Rein</u>, 553 F.3d at 374 (quoting 5 U.S.C. 552(b) (emphasis deleted; second alteration in the original)). That means non-exempt factual material "must be disclosed unless [it is] inextricably intertwined with exempt portions such that the disclosure of those facts would compromise the confidentiality of the deliberative information that is entitled to protection under Exemption 5, in which case the factual materials need not be disclosed." <u>Id.</u> (internal quotation marks and citations omitted); <u>see also</u> <u>EPA v. Mink</u>, 410 U.S. 73, 87-88 (1973) ("[I]n the absence of a claim that disclosure would jeopardize state secrets, memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government. . . . . Virtually all of the

21

courts that have thus far applied Exemption 5 have recognized
that it requires different treatment for materials reflecting
deliberative or policy-making processes on the one hand, and
purely factual, investigative matters on the other.").

There appears to be no dispute that the MOIs are
predecisional.  MSHA's Vaughn index notes that the MOIs were
created in December of 2013, and the agency did not write to
Justice to convey the results of its investigation until
December 30, 2013.  The parties disagree, however, about whether
the MOIs are entirely deliberative.  MSHA asserts that the MOIs
must be withheld because the testimony of the MSHA inspectors,
if revealed, could "indicate what is important for special
investigation purposes," and maintains generally that the
testimony of MSHA inspectors "often includes personal opinions."
Vaughn Index at 7.  According to the agency, "[r]elease of these
statements could impair the quality of inspectors'
investigations," id., and "any attempt at segregating the
information in [the MOIs] would provide little or no
informational value, because the material is inextricably
intertwined," Matos Decl. ¶ 16.

Justice concedes that, "[t]o the extent that the
interviewee inspectors' testimony includes their opinions about
what is important for the purposes of . . . investigation . . .

22

those opinions . . . should be redacted[.]"  Pl.'s Mem. at 8.
But he also argues that MOIs typically do not include opinions,
and maintains that any segregable factual testimony about what
the MSHA inspectors witnessed on October 24, 2013 must be
released.  In support of that proposition he notes that MSHA
eventually released the MOIs of several Gateway officials in
their entirety, none of which include the investigator's opinion
about the case.  Justice is right about that.  The MOIs that
have been disclosed thus far contain narrative, summary accounts
of the interview subject's testimony.  They are written in an
objective, neutral tone; the investigator's opinion (if any)
about the credibility or relevance of the information is not
discernible.  Of course, it's possible that the MOIs of the MSHA
inspectors are different[3] -- but apart from the vague suggestion
that inspector testimony "often includes personal opinions," the
agency's index and declaration do not assert that <u>these</u> MOIs
contain opinion testimony about MSHA's investigation.

    Even if the MOIs are largely factual, they may still
be subject to Exemption 5 if the "factual material was assembled

_____

[3] MSHA argues as much, complaining that Justice "incorrectly
characterizes the MSHA inspectors' MOIs as similar in nature to
MOIs taken from mine management or miner witnesses[.]"  Def.'s
Resp. at 3.  But the agency does not explain how the MOIs
differ, except by reiterating its conclusion that the records
are "pre-decisional intra-agency communications."  <u>Id.</u>

23

through an exercise of judgment in extracting pertinent material from a vast number of documents" that would reveal the agency's deliberative process.  See, e.g., Mapother v. DOJ, 3 F.3d 1533, 1537-40 (D.C. Cir. 1993); see also Phillips v. Immigration & Customs Enforcement, 385 F. Supp. 2d 296, 302-03 (S.D.N.Y. 2005) (holding that factual matter contained in an official's notes from an interview with an applicant for asylum was subject to Exemption 5 because the notes were not a "verbatim transcript" but reflected "a selective recording of information particularly pertinent to [the applicant's] request for asylum").

On the other hand, an objective recording of factual matter that presents "no point of view" and "in no way betrays the occasion that gave rise to its compilation" is likely not exempt, and must be released if reasonably segregable.  See Mapother, 3 F.3d at 1539-40 (holding that, although some portions of a report were properly withheld under Exemption 5, a separate portion that was "in substance an inventory, presented in chronological order," documenting factual information about a subject's military career, was reasonably segregable).  The question is whether the MOIs contain opinions and recommendations that cannot be reasonably segregated from factual matter contained in the witnesses' statements.  See Lurie v. Dep't of Army, 970 F. Supp. 19, 34-35 (D.D.C. 1997)

("Witness statements obtained in the course of an agency investigation are subject to withholding under FOIA's Exemption 5, provided such statements otherwise satisfy the criteria of Exemption 5. . . . . Witness statements, like those withheld by the Army here, raise Exemption 5 questions where the witnesses include among their version of the facts their opinions and recommendations.  Unless the factual portions cannot be reasonably segregated from the opinions or where disclosure would otherwise reveal the agency's deliberative process, the facts must be disclosed.").

Ultimately, in this instance, whether the MOIs of the MSHA inspectors reveal the agency's deliberative process is impossible to determine based on the material contained in the Vaughn index and the agency's affidavit.  "[T]o be adequate," the index "must provide enough facts for the district court to determine that the document [is] 'predicisional' and 'deliberative.'"  Rein, 553 F.3d at 370; see also Nat'l Sec. Counselors v. CIA, 960 F. Supp. 2d 101, 188 (D.D.C. 2013) ("The need to describe each withheld document when Exemption 5 is at issue is particularly acute because the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process." (citations and quotation marks omitted)).  To reach that conclusion here, the

index would need to permit the court to conclude that the MOIs of the MSHA inspectors contain something other than an objective recitation of the factual matter contained in the interviewees' statements about the argument between Justice and the Gateway officials on October 24, 2013.  As it stands, the agency's materials do not permit that conclusion.

The index does not clearly assert, for example, that the MOIs with the MSHA inspectors contain the investigator's opinions about the case.  Nor does the index suggest that the MSHA inspectors offered their own opinions about the merits of Justice's complaint, or the reliability of other witnesses.  The agency's declaration claims that any potentially non-exempt information contained in those records is "inextricably intertwined" with exempt material.  Matos Decl. ¶ 16.  But without more clues about the nature of any non-factual information that may be contained in the MOIs, that conclusion standing alone is insufficient.  See Rein, 553 F.3d at 369-70 ("Without revealing any facts about the documents' contents, the Agencies have merely asserted their conclusion that the document is exempt, employing general language associated with the deliberative process.").

## 2. Exemption 7(C)

"Exemption 7(C) . . . authorizes agencies to withhold 'records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information [. . .] could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" <u>Neely v. F.B.I.</u>, 208 F.3d 461, 463 (4th Cir. 2000) (quoting 5 U.S.C. § 552(b)(7)(C)).

The parties do not dispute that the MOIs were compiled for law enforcement purposes, so the relevant question, as the statutory text suggests, is whether their disclosure would work an "unwarranted" invasion of privacy.  To make that determination, the court must weigh the public's interest in disclosure of the responsive information against the relevant privacy interests.  <u>Id.</u> at 463-64.

Justice maintains that miners, like him, "have been afforded important anti-discrimination rights under the Mine Act," and argues (more or less) that there is a strong public interest in better enabling miners to enforce those rights.  <u>See</u> Pl.'s Mem. at 16-17.  That's a non-starter, because "the Supreme Court has made clear in no uncertain terms," that "'the identity of the requesting party' and 'the purposes for which the request

27

for information is made' by that party 'ha[ve] no bearing on the merits of his or her FOIA request.'"  <u>Neely</u>, 208 F.3d at 464 (quoting <u>DOJ v. Reporters Comm. for Freedom of Press</u>, 489 U.S. 749, 771 (1989)).  Instead, "the only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  <u>Dep't of Def. v. FLRA</u>, 510 U.S. 487, 497 (1994) (quoting <u>Reporters Comm.</u>, 489 at 773).

But just because Justice's particular interest in the documents is irrelevant doesn't mean there's no public interest at all in disclosure of the MOIs.  To the contrary, MSHA has a statutory duty to investigate claims by miners against mine operators, 30 U.S.C. § 815(c)(2), and the content of the MOIs may well "shed light on the agency's performance of [those] statutory duties" by elucidating the extent of MSHA's investigative efforts.  <u>Cf. Citizens for Responsibility & Ethics in Washington v. DOJ</u>, 746 F.3d 1082, 1093 (D.C. Cir. 2014) ("Disclosure of the FD-302s and investigative materials could shed light on how the FBI and the DOJ handle the investigation and prosecution of crimes[.]"); <u>PETA v. NIH</u>, 745 F.3d 535, 542 (D.C. Cir. 2014) ("[T]here is a cognizable public interest in

learning how NIH handles complaints concerning animal abuse and misappropriation of federal research funds."); Stern v. FBI, 737 F.2d 84, 92 (D.C. Cir. 1984) (describing a public interest in "knowing that a government investigation itself is comprehensive").

On the other side of the scale, the agency argues that the MSHA inspectors "clearly have a privacy interest in protecting [] personal information," such as their "names, titles, home addresses, home telephone numbers, fax numbers, signatures, and license plate numbers" from public disclosure. Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("Def.'s Mem.") at 17.  That much appears uncontroversial.  As our court of appeals has explained, "FBI agents, government employees, third-party suspects, and other third parties mentioned or interviewed in the course of the investigation have well-recognized and substantial privacy interests in" information consisting primarily of "identifying information."  Neely, 208 F.3d at 464-65.  But the agency's justifiable interest in protecting the inspectors' personal identifying information doesn't explain its broader assertion that "Exemption 7(C) applies to the entirety of the Memoranda of Interview of MSHA inspectors . . . and any attempt at segregating the information in those documents would provide

little or no informational value, because the material is inextricably intertwined."  Matos Decl. ¶ 16.

MSHA expands on its argument somewhat in its reply brief, suggesting that "disclosing the identities of . . . MSHA inspectors interviewed in connection with [the] investigation, or of information contained therein, [] could subject sources to retaliation, harassment, or intimidation."  Def.'s Resp. at 4. More specifically, the agency posits that MSHA inspectors maintain a "close working relationship" with mine personnel with whom they "are likely to have repeated and ongoing relationships," id. at 3, 5, and that the MOIs "contain candid discussions of people and events, and may include personal opinions," id. at 2.  As a result, the agency asserts, "[r]elease of these statements . . . may adversely impact other routine inspections and accident investigation functions involving the same mine."  Id. at 2.

Fourth Circuit precedent leaves no doubt that "individuals have a substantial interest in the nondisclosure of their identities and their connection with particular investigations because of the potential for future harassment, annoyance, or embarrassment."  Neely, 208 F.3d at 464-65 (emphasis added).  That just underscores the agency's legitimate interest in redacting the personal identifying information

discussed above; it doesn't provide a basis for withholding the documents in their entirety.  See <u>Nation Magazine, Washington Bureau v. U.S. Customs Serv.</u>, 71 F.3d 885, 896 (D.C. Cir. 1995) (opining that an agency may not "exempt from disclosure <u>all</u> of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address" because "such a blanket exemption would reach far more broadly than is necessary to protect the identities of [those] individuals" and "would be contrary to FOIA's overall purpose of disclosure" (emphasis in the original)).  And the agency's concerns about future investigations appear to correspond with a different exemption that MSHA has not relied upon in its index, its declaration, or its summary judgment materials.  See 5 U.S.C. § 552(b)(7)(A) (providing an exemption if the production of records compiled for law enforcement purposes "could be reasonably expected to interfere with enforcement proceedings").

It's true, of course, that there are some instances in which categorical withholding under Exemption 7(C) is appropriate.  See <u>Reporters Comm.</u>, 489 U.S. at 776-80 (holding that categorical withholding under Exemption 7(C) is appropriate only when "a case fits into a genus in which the balance" between disclosure and privacy "characteristically tips in one

direction"). But such a sweeping invocation of the Exemption is warranted only where "the privacy interest protected by Exemption 7(C) is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir." Id. at 780. MSHA has not shown that kind of categorical imbalance between the public and private interests in this case. Cf. Citizens for Responsibility & Ethics in Washington v. DOJ, 746 F.3d at 1096 (holding that the DOJ's categorical withholding of records relating to an FBI investigation under Exemption 7(C) was improper where the balance between public disclosure and privacy interests did not tip decisively in favor of withholding).

C.

Personal information concerning the identities of the inspectors falls within the ambit of Exemption 7(C) and may be redacted, but MSHA has not shown that it is entitled to categorically withhold the MOIs of the MSHA inspectors under that Exemption. And, as noted at length, the agency's Vaughn index and declaration do not provide enough detail to determine whether the MOIs are subject wholly or partially to Exemption 5's deliberative process privilege. As a result, MSHA is not entitled to summary judgment as to the MOIs of the MSHA inspectors at this time.

32

Nevertheless, because the information contained in the index, particularly when viewed in the light most favorable to the agency, raises at least the possibility that the MOIs contain information subject to Exemptions 5 and 7(C), summary judgment in the plaintiff's favor as to the inspector MOIs is also not yet appropriate.  Justice recognizes as much and urges the court to resolve through in camera review the "factual dispute about whether the MOIs of the two MSHA inspectors contain segregable, non-deliberative, otherwise non-exempt information."  Pl.'s Mem. at 20.  Before undertaking that step, the court is content to afford MSHA an additional opportunity to review the MOIs to determine whether any of the information contained therein is segregable and, if so, disclosable.  See Keeper of the Mountains, 514 F. Supp. 2d at 856 (declining to undertake in camera review before affording the agency a second chance to review the challenged documents).

IV. Conclusion

For the foregoing reasons, it is ORDERED:

1. That the plaintiff's motion to amend the complaint be, and hereby is, denied;

2. That the plaintiff's motion for summary judgment be, and hereby is, held in abeyance with respect to the MOIs of the MSHA inspectors, but otherwise denied;

3. That the defendant's motion for summary judgment be, and hereby is, granted with respect to those documents already disclosed and those withheld documents that are not subject to dispute, but held in abeyance as to the MOIs of the MSHA inspectors;

4. That MSHA be, and hereby is, directed to review, in light of the foregoing discussion, the MOIs of the MSHA inspectors to determine whether any portions of those records are segregable and disclosable; and

5. That MSHA be, and hereby is, directed to confer with Justice within twenty days of the entry of this order respecting the MOIs of the MSHA inspectors.  To the extent there remains disagreement as to the disclosure of those documents, MSHA is directed to submit the MOIs of the MSHA inspectors to the court by August 31, 2015 for in camera review.

        The Clerk is directed to forward copies of this

memorandum opinion and order to all counsel of record and any

unrepresented parties.

                        DATED: July 31, 2015


                        John T. Copenhaver, Jr.
                        United States District Judge