UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MARSHALL JUSTICE,

    Plaintiff,

v.                      Civil Action No. 2:14-14438

MINE SAFETY AND HEALTH
ADMINISTRATION,

    Defendant.


MEMORANDUM OPINION & ORDER

      Pending is plaintiff's petition for attorney's fees and costs, filed August 17, 2016 (ECF No. 45).

I.   Facts and Procedural History

      The facts of this case are set forth fully in the court's previous memorandum opinion and order.  See Mem. Op. & Order, No. 2:14-cv-14438, 2015 WL 4621543 (S.D. W. Va. July 31, 2015) (ECF No. 39).  Only a brief recapitulation is provided here.

      Plaintiff, Marshall Justice, submitted a Freedom of Information Act ("FOIA") request to the Mine Safety and Health Administration ("MSHA") on December 5, 2013.  Justice sought all non-privileged material related to MSHA's investigation of an

earlier administrative complaint (dismissed by plaintiff on November 26, 2014) in which he alleged that MSHA discriminated against him for engaging in protected safety-related activities. Compl. ¶ 11.  MSHA notified plaintiff by letter dated January 24, 2014 that it would require ninety working days (presumably calculated to expire on June 3, 2014) to process and complete plaintiff's FOIA request because it needed to search for and collect records from separate offices and determine which records if any were exempt under FOIA.

Plaintiff's two-count complaint in this case was filed on April 10, 2014.  Count I alleges that defendant violated FOIA by failing to release plaintiff's requested records.  Compl. ¶¶ 19-20 (ECF No. 1).  Count II asks the court for declaratory relief to the same effect.  See Compl. p. 6 (WHEREFORE clause).

On May 2, 2014, MSHA opened its 112-page file to plaintiff, of which it released 45 pages without redaction, released 26 pages with partial redactions, and withheld 41 pages.  On September 22, 2014, MSHA reinstated policies that had been in effect prior to 2002 that state, inter alia, that:

> [i]nformation [that is to be] released to complainants
> and their representatives in closed Section 105(c)
> discrimination cases filed under the Freedom of
> Information Act . . . [includes]:
>
> . . . .

2

- Complainant's personnel records, usually provided by company, if available in record
- All management statements involved in decision-making process (appropriate redactions applied)
- Position statements prepared by Company attorney
- All records provided by company to support its position (appropriate redactions applied)
- Heavily redacted witness statements taken with management/company attorney present (appropriate names and identifying information redacted)
  . . . .

See Pl.'s Mem. in Opp. to Def.'s Mot. to Stay Disc. and Amend Scheduling Order, Ex. at 2 (ECF. No. 24-1).  Defendant's in-house counsel, April Nelson, emailed plaintiff's counsel, Sam Petsonk, a copy of the policy renewal notice the same date that it was issued.  In accordance with its reinstated policy, MSHA released more pages on December 16, 2014, such that with respect to plaintiff's 112-page file, it has released in total 51 pages without redactions, released 31 with some redactions, and withheld 30 completely.  Assistant U.S. Attorney Gary Call explained the policy change and its application to plaintiff in a letter to plaintiff's counsel as follows:

> [I]n reviewing a number of case files to evaluate more specifically the probable privacy impact of the release of statements, MSHA believed that more management officials, especially those speaking in front of company attorneys or other company representatives, likely would experience no personal privacy impact in the release of their statements. Subsequently, MSHA reprocessed under FOIA any case file upon request, and has issued a number of supplemental responses to different FOIA requesters, including you.

3

Def.'s Mot. for Summ. J. Ex. 13 at 2 (ECF No. 30-1).

On July 31, 2015, this court ordered MSHA to reconsider its decision to withhold four of the pages in plaintiff's file and to meet with Justice to attempt an amicable resolution of the dispute over those pages. See July 31, 2015 Mem. Op. and Order (ECF No. 39) (hereinafter "July 31, 2015 Order"). If an amicable resolution proved impossible, the court ordered MSHA to submit the disputed pages for in camera review. Those four pages - MSHA000090 through MSHA000093 - are described in MSHA's Vaughn index as "Memoranda of Interview of MSHA inspectors by MSHA Section 105(c) complaint investigator, conducted in December of 2013," henceforth referred to as the two "inspector MOIs." See Notice of Disclosure 7-10 (ECF No. 40). Each memorandum consists of two pages. As indicated by the Vaughn index, the first is composed of MSHA000090 and 91, and the second of MSHA000092 and 93.

On August 18, 2015, MSHA released partially redacted versions of the inspector MOIs to plaintiff. Plaintiff objected to partial redaction of the MOIs, and the court later passed on the MOIs via in camera review, ruling that partial disclosure of the MOIS was sufficient to fulfill the expectations set by FOIA. See, March 29, 2016 Mem. Op. and Order (ECF No. 42). In its Judgment Order of August 17, 2016, the court rendered judgment

4

for defendant on Count II and for plaintiff on Count I with respect to all those documents disclosed by that point by defendant, but not with respect to redacted portions of the inspector MOIs. J. Order 1-2 (ECF No. 43).

In his petition for costs and fees, plaintiff argues that he has "substantially prevailed" and is entitled to attorney's fees and costs under FOIA, 5 U.S.C. § 552(a)(4)(E). In particular, plaintiff argues that he obtained relief in this case through the release of a substantial amount of documents and through "a voluntary or unilateral change in position by the agency." See Pl.'s Pet. for Att'y's Fees and Costs 4 (ECF No. 46) (hereinafter "Pet."); 5 U.S.C. § 552(a)(4)(E). The petition states that

> Defendant substantially revised its disclosure policy
> in accordance with the Plaintiff's demand for
> declaratory judgment, after the Plaintiff continued to
> prosecute this case beyond initial dispositive
> motions. Defendant's decision to share minimally-
> redacted investigative files with mine safety
> discrimination complainants is a major improvement in
> the transparency and efficacy of anti-discrimination
> policy and procedure in the mining industry that will
> have nationwide impacts for all of America's coal,
> metal, and nonmetal miners – quite a substantial
> impact.

Pet. 4. Plaintiff also contends that his counsel's rates were reasonable and justified by the market for legal services. Pl.'s Reply in Supp. of Pet. for Att'y's Fees 7-9 (ECF No. 50) (hereinafter "Reply").

Defendant MSHA responds that plaintiff did not substantially prevail on either Count. MSHA argues that none of its disclosures was "the product of a judicial order, an enforceable written agreement," or a voluntary policy change by the agency under 5 U.S.C. § 552(a)(4)(E). Def.'s Resp. to Pet. 10 (ECF No. 49) (hereinafter "Resp."). It contends that plaintiff must show that "there is a causal link between the action and the release of the documents," and that none of its successive documentary releases met this standard. Id. 11. Defendant further contends that even if plaintiff were eligible for fees because he had substantially prevailed, plaintiff is not entitled to his fees because his litigation has not provided sufficient public benefit. Finally, defendant argues that the time charges submitted by plaintiff's counsel are too vague and inadequate to permit reasonable analysis.

## II. Analysis

Whether an award of attorney's fees is proper under FOIA depends on a two-step inquiry: the complainant must first demonstrate "eligiblity" for fees, and second, "entitlement" to fees. Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1495 (D.C. Cir. 1984). The court will first analyze eligibility for fees with respect to each of the three disclosures at issue here, and will then analyze plaintiff's entitlement to any fees

6

for which he is eligible.

The standard governing eligibility is stated in 5 U.S.C. § 552(a)(4)(E) as follows:

> (i) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.
>
> (ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either--
>
> > (I) a judicial order, or an enforceable written agreement or consent decree ["prong (I)"]; or
> >
> > (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial ["prong (II)"].

5 U.S.C. § 552(a)(4)(E).  If the court determines that a litigant has substantially prevailed, it then assesses whether the litigant is entitled to fees by looking to the four factors elaborated in section (B) below.  Notably, "the burden is on plaintiff to show that 'the lawsuit was reasonably necessary and the litigation substantially caused the requested records to be released.'"  Am. Bird Conservancy v. U.S. Fish & Wildlife Serv., 110 F. Supp. 3d 655, 665 (E.D. Va. 2015) (quoting Burka v. U.S. Dep't of Health and Human Servs., 142 F.3d 1286, 1288 (D.C. Cir. 1998)).

### A.   Eligibility for Fees

The Supreme Court's ruling in <u>Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources</u>, 532 U.S. 598 (2001), dictated from 2001 to 2007 that "plaintiffs generally would only be eligible for attorney fees if they were 'awarded some relief by [a] court,'" as reflected in prong (I) of the definition of "substantially prevailed" in 5 U.S.C. § 552(a)(4)(E).  See <u>Brayton v. Office of the U.S. Trade Representative</u>, 641 F.3d 521, 525 (D.C. Cir. 2011) (alteration in original) (quoting <u>Buckhannon</u>, 532 U.S. at 603).

> The strict <u>Buckhannon</u> rule drew some criticism for allowing the government to stonewall valid FOIA claims but prevent an award of attorney fees by disclosing the documents at the last moment before judgment. An agency could simply refuse a FOIA request, wait for a lawsuit to be filed, drag its heels through the litigation process, and then release the requested documents at the last moment if the plaintiff appeared likely to win a judgment. Agencies could force FOIA plaintiffs to incur litigation costs while simultaneously ensuring that they could never obtain the merits judgment they needed to become eligible for attorney fees. To address this problem, Congress passed the OPEN Government Act of 2007, Pub.L. No. 110–175, which abrogated the rule of <u>Buckhannon</u> in the FOIA context and revived the possibility of FOIA fee awards in the absence of a court decree. The Act redefined "substantially prevail[ing]" to include "obtain[ing] relief through . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).

> The purpose and effect of this law, which remains in effect today, was to change the "eligibility" prong back to its pre-<u>Buckhannon</u> form.

Brayton, 641 F.3d at 525 (alterations in original).  Prior to

Buckhannon, the so-called "catalyst theory" governed fee

eligibility, and dictated that "a plaintiff 'substantially

prevailed' not only when he obtained an official disclosure

order from a court, but also when he substantially caused the

government to release the requested documents before final

judgment."  Id. at 524–25.  See also Lapp v. Fed. Bureau of

Investigation, No. 1:14-CV-160, 2016 WL 737933, at *9 (N.D.W.

Va. Feb. 23, 2016) (noting that "Congress's subsequent 2007

amendments to the FOIA establish[ed] that the catalyst theory

applied in FOIA cases" (alteration in original) (quotation marks

omitted)).  "In other words, to determine whether [a plaintiff]

substantially prevailed, in the absence of a final judgment in

his favor, is a question of causation — the lawsuit must have

resulted in the release of records that would not otherwise have

been released."  Reinbold v. Evers, 187 F.3d 348, 363 (4th Cir.

1999) (emphasis added) (observing that plaintiff brought forth

"no evidence" that records would not have been released but for

his claim).

         MSHA made disclosures to plaintiff on three separate

occasions: one on May 2, 2014, one on December 16, 2014, and one

on August 18, 2015.[1]  The court will analyze each independently
for purposes of determining which portion of counsel's fees, if
any, may be awarded.  Cf. Am. Bird Conservancy, 110 F. Supp. 3d
at 663 (breaking down eligibility for fees based on successive
disclosures and analyzing each independently).

---

[1] MSHA in its response points out that "the timing of disclosures
indicates correlation rather than causation," which it presumes
is insufficient to show eligibility on the basis of Weisberg.
Resp. 12.  Weisberg, however, which the Fourth Circuit cited
favorably in Reinbold, makes no such distinction.  In Weisberg,
the District Court had determined the complainant was entitled
to attorney's fees simply because the Department of Justice had
disclosed over 50,000 pages of documents after the commencement
of the action.  745 F.2d at 1496.  Additionally, "the District
Court paid no heed to the Department's overwhelming backlog of
FOIA requests, which this court had occasion to consider in
[Open America v. Watergate Special Prosecution Force, 547 F.2d
605 (D.C. Cir. 1976)]. In this case, it is clear beyond
peradventure that appellant's request involved huge numbers of
documents, as well as laborious and time-consuming reviews."
Id.
        The case at bar, however, is not analogous to
Weisberg.  First, plaintiff's complaint involves nowhere near
the 50,000-plus-page request at issue in Weisberg.  MSHA's file
on plaintiff totaled 112 pages.  Second, while correlation may
not strictly imply causation, disclosures of documents arising
after instigation of FOIA litigation certainly can provide some
indication that litigation catalyzed disclosure, depending on
the status of litigation at a particular time of disclosure.
See, e.g., Am. Bird Conservancy, 110 F. Supp. 3d at 667 (E.D.
Va. 2015) (finding that disclosure of documents by Department of
Interior after dispositive motions were filed or when the court
was reviewing documents in camera strongly suggests causation).
Here, defendant failed to disclose the full cache of documents
(except the MOIs) until December 16, 2014.  Additionally, MSHA
only finally disclosed the inspector MOIs after the court's
intervention.  July 31, 2015 Order 34.

## 1.   First Disclosure

Plaintiff nowhere specifically contends that he is eligible for fees with respect to the May 2, 2014 disclosure, although he might be taken to suggest as much when he states that he is entitled to fees because defendant has produced "more and more documents during the pendency of this suit." Pet. 4. However, this argument does not justify eligibility for the first disclosure because "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." Weisberg, 745 F.2d at 1496; Simon v. United States, 587 F. Supp. 1029, 1031 (D.D.C. 1984) ("[T]he mere sequence of events — i.e., that production followed the initiation of a suit — does not establish plaintiffs' eligibility for fees.").

Of course, FOIA requires an agency to "determine within 20 days . . . after the receipt of [a FOIA] request whether to comply with such request." 5 U.S.C. § 552a)(6)(A)(i). However, as the court stated in its previous Memorandum Opinion and Order, "[n]othing in that language requires an agency to disclose all of the requested documents within 20 days, as Justice would have it." July 31, 2015 Mem. Op. and Order 14 (ECF No. 39). See also Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n, 711

11

F.3d 180, 188 (D.C. Cir. 2013) (a "determination [to comply]
does not require actual production" of requested documents
within 20 days (emphasis in original)). FOIA only requires that
once MSHA has made a determination and collected its records, it
will make those records promptly available to the requester.
See 5 U.S.C. § 552(a)(6)(C)(i); Citizens for Responsibility, 711
F.3d at 188. MSHA notified Justice that it would require ninety
working days from January 24, 2014, to complete his request
because, among other things, it needed to search for and collect
records from separate offices and determine which records if any
were exempt under FOIA. See July 31, 2015 Mem. Op. and Order 3.
MSHA then made its initial disclosure on May 2, 2014, well in
advance of its self-imposed deadline, completing the request
within what was presumably 69 working days. Pet. 1. Justice
has simply provided no reasons, arguments, or evidence for
thinking that this disclosure resulted from anything other than
the completion of a records search and the reasonably prompt
disclosure thereof. Consequently, he is not eligible to recover
fees related to the first disclosure.

### 2. Second Disclosure

The second disclosure occurred on December 16, 2014,
after MSHA reinstated its pre-2002 disclosure policy applying to
miners like Justice. MSHA released eleven additional pages, six

unredacted and five redacted.  Resp. 3.  Plaintiff argues that
his complaint precipitated MSHA's change in disclosure policy on
September 22, 2014 and subsequently the "supplement disclosures
that the Defendant made to the Plaintiff pursuant to that new
policy in December 2014."  Reply 2-3.

        Plaintiff relies on several contentions in making this
claim.  First, plaintiff correctly notes that MSHA's in-house
counsel e-mailed a copy of the policy change to plaintiff's
counsel on the date that MSHA reinstated it.  Reply Ex. 1.
Second, plaintiff notes that the reinstated policy "addressed
FOIA practices that were at issue in this lawsuit."  Reply 5.
Third, plaintiff observes that MSHA's December disclosure "fell
within the scope of the expanded policy.  Therefore, it is
apparent that the agency targeted this new policy toward
attempting to resolve the specific FOIA claims that the
plaintiff was pursuing."  Reply 5.

        Assistant U.S. Attorney Gary Call explained the policy
change in a letter to plaintiff's counsel as follows:

        [I]n reviewing a number of case files to evaluate more
        specifically the probable privacy impact of the
        release of statements, MSHA believed that more
        management officials, especially those speaking in
        front of company attorneys or other company
        representatives, likely would experience no personal
        privacy impact in the release of their statements.
        Subsequently, MSHA reprocessed under FOIA any case
        file upon request, and has issued a number of

13

supplemental responses to different FOIA requesters, including you.

Def.'s Mot. for Summ. J. Ex. 13 at 2.  This policy related specifically to Justice's claims, which does suggest that his claims were at least part of the reason for MSHA's policy change here.  See Brayton, 641 F.3d at 524-25.  Indeed, MSHA's only response to plaintiff's claim that he catalyzed the policy change consists of a single sentence, stating that "Plaintiff is unable to produce a single letter, email or similar document indicating that this release was somehow triggered by this action."  Resp. 12.  As just noted, however, plaintiff has shown that MSHA emailed the policy change directly to plaintiff's counsel as soon as it was enacted.  Reply Ex. 1.  While it is a close question, in conjunction with Mr. Call's statement, it can be inferred that Justice's claims helped in part to catalyze the policy change.  Consequently, the court finds that Justice is eligible for fees with respect to the December 16, 2014 disclosure.

### 3.   Third Disclosure

Litigation over the two inspector MOIs in plaintiff's file continued after the second disclosure.  The MOIs remained in dispute until, and even after, the court's July 31, 2015 Order directing MSHA to reconsider disclosure.  In its third and

final disclosure, MSHA released the two MOIs on August 18, 2015.
MSHA's successive disclosures raise the specter with which the
pre-Buckhannon "catalyst theory" is concerned.  Brayton, 641
F.3d at 525 ("An agency could simply refuse a FOIA request, wait
for a lawsuit to be filed, drag its heels through the litigation
process, and then release the requested documents at the last
moment if the plaintiff appeared likely to win a judgment.").
As noted in Brayton, prong (II) of the "substantially prevailed"
analysis under 5 U.S.C. § 552(a)(4)(E) was specifically enacted
by the OPEN Government Act of 2007 to reinstate the attorney's
fees jurisprudence predating Buckhannon.  Id.  The 2007 Act
ensconces "a voluntary or unilateral change in position by the
agency, if the complainant's claim is not insubstantial"
squarely within the definition of "substantially prevailed."  5
U.S.C. § 552(a)(4)(E)(ii)(II).

        Plaintiff appears to argue that this prong of the
definition aims at agency-wide policy changes, salient here to
the extent that MSHA issued such a change in September 2014.
See Reply 5.  In fact, however, prong (II) can be read in
simpler fashion: namely, if the agency changes its "position" in
the course of litigation with respect to the particular
complainant and the claim is not insubstantial, then the
complainant has substantially prevailed.  On this simpler

reading, MSHA patently and "voluntarily" changed its position on the two MOIs at issue in the July 31, 2015 Order.  The court directed MSHA to consider partial disclosure, MSHA did so, and MSHA subsequently volunteered disclosure.  Resp. 4. Furthermore, the MOIs clearly bore some relevance to plaintiff's case, making them not insubstantial.  On this reading of prong (II), then, plaintiff has substantially prevailed under the pre-Buckhannon catalyst theory by arguing for disclosure, ultimately causing MSHA to issue the MOIs.  Under the catalyst theory, plaintiff thereby caused the agency to change its position and issue the third disclosure, making plaintiff eligible for attorney's fees with respect to that disclosure.[2]

Even assuming arguendo that plaintiff is not eligible for fees under prong (II), plaintiff is eligible for fees under prong (I).  Prong (I) provides that a complainant substantially prevails "if the complainant has obtained relief through . . .

_____

[2] Defendant argues that finding such an outcome "in effect punish[es] MSHA for acting on the Court's suggestion that it try to find common ground with the Plaintiff."  This argument, however, is an inversion of reality.  Defendant is not the victim here: allowing plaintiff to retrieve attorney's fees is not a punishment but a right established by statute.  Defendant could very well have avoided the possibility of an imposition of fees by disclosing the redacted MOIs in the first place; it is precisely the awarding of attorney's fees under 5 U.S.C. § 552(a)(4)(E) that aims to deter government agencies from "drag[ging] [their] heels through the litigation process." Brayton, 641 F.3d at 525.

(I) a judicial order, or an enforceable written agreement or consent decree." 5 U.S.C. § 552(a)(4)(E). First, plaintiff obtained relief through the July 31, 2015 Order. It is safe to assume that, under the catalyst theory, but for plaintiff's litigation and the court's Order, MSHA would not have made the third disclosure. Furthermore, the court's Judgment Order of August 17, 2016 entered judgment "in favor of plaintiff Marshall Justice, and against the defendant Mine Safety and Health Administration ('MSHA') . . . with respect to Count I of the complaint insofar as [he] seeks disclosure of certain documents voluntarily released by MSHA on May 2, 2014, December 16, 2014, and August 18, 2015." J. Order 1. As a consequence, under both prong (I) and prong (II) of 5 U.S.C. § 552(a)(4)(E)(ii) plaintiff is eligible for attorney's fees with respect to work related to the disclosure of the two inspector MOIs.

### B. Entitlement to Fees

Eligibility, however, is only the first step in awarding fees. The court must also determine that a complainant is entitled to fees. See Reinbold, 187 F.3d at 363. The four factors relevant to that analysis are "'(1) the benefit to the public, if any, derived from the case; (2) the benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records sought; and (4) whether the government's withholding of

the records had a reasonable basis in the law.'". **Id.** at 362 n.16 (quoting **Gowan v. U.S. Dep't of Air Force**, 148 F.3d 1182, 1195 (10th Cir. 1998)).  **See also Aviation Data Serv. v. Fed. Aviation Admin.**, 687 F.2d 1319, 1323 (10th Cir. 1982) (noting that "attorney fees may be awarded only on a positive and clear showing of substantial public benefit"); **Church of Scientology of Cal. v. U.S. Postal Serv.**, 700 F.2d 486, 493 (9th Cir. 1983) (emphasizing public benefit in its analysis); **Blue v. Bureau of Prisons**, 570 F.2d 529, 534 (5th Cir. 1978) (public benefit criterion may weigh more heavily than other criteria).  Public benefit is emphasized in **American Bird Conservancy**:

> But importantly, the benefit to the public must be specific and concrete because '[i]t is doubtless true . . . that the successful FOIA plaintiff always acts in some degree for the benefit of the public.' [**Sabalos v. Regan**, 520 F. Supp. 1069, 1072 (E.D. Va. 1981)](internal quotation marks and citations omitted). In evaluating this factor '[t]he degree of dissemination to the press and public are recognized as important factors in determining whether a public benefit exists.' [**Jarno v. Dep't of Homeland Sec.**, 365 F. Supp. 2d 733, 738 (E.D. Va. 2005).] Thus, analysis under this factor 'requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought . . . .' **Davy v. C.I.A.**, 550 F.3d 1155, 1159 (D.C. Cir. 2008).

110 F. Supp. 3d at 668 (alterations other than full citations in original).  **See also Aviation Data Serv.**, 687 F.2d at 1323 ("Minimal, incidental and speculative public benefit will not suffice."); **Jarno**, 365 F. Supp. 2d at 739 (finding entitlement

to fees where plaintiff could point to articles in the press "specifically regarding the documents released as a result of th[e] Court's Order"); Menasha Corp. v. U.S. Dep't of Justice, No. 11-C-682, 2012 WL 1034933, at *5 (E.D. Wis. Mar. 26, 2012) (finding no entitlement to fees where likelihood that particular documents would be disseminated beyond the divulging litigation was "speculative").

The primary importance of the public benefit factor is evidenced by the fact that a court does not award fees where a FOIA requester uses the request "as a substitute for discovery in private litigation with the government." Young v. Dir., C.I.A., No. 92-2561, 1993 WL 305970, at *2 (4th Cir. 1993) (citing Nationwide Bldg. Maint., Inc. v. Sampson, 559 F.2d 704, 712 (D.C. Cir. 1977)). As discussed, the court has determined that plaintiff is only eligible for fees related to the second and third disclosures. Consequently, the court will analyze entitlement to fees only with respect to those two disclosures.

### 1. Second Disclosure

With respect to the second disclosure on December 16, 2014, plaintiff provides no argument or evidence for why he should be entitled to fees. There is no evidence suggesting that any of the documents disclosed on December 16 – whether redacted or not - were "disseminat[ed] to the press and public,"

19

or even that they were relevant to any matters of public
interest or concern.  Am. Bird Conservancy, 110 F. Supp. 3d at
668.  Plaintiff does not explain how the documents were of
public benefit.  He might have done so by, for example, showing
that "members of the media [were] seeking the information," but
there is no evidence of any such public interest in the
documents.  See Virginia-Pilot Media Companies, LLC v. Dep't of
Justice, 147 F. Supp. 3d 437, 451 (E.D. Va. 2015).  Plaintiff
has not provided evidence to show a private benefit to himself
or even the nature of his interest in the records, aside from
the obvious interest in obtaining records relating to his
underlying litigation.  Neither has he shown that the FOIA
exemptions that were cited by MSHA did not "at least constitute
a colorable basis" on which to withhold or redact certain
documents.  Aviation Data Serv., 687 F.2d at 1323.

        This is very far indeed from the "positive and clear
showing of substantial public benefit" required here to entitle
one to fees under FOIA.  Aviation Data Serv., 687 F.2d at 1323.
Plaintiff simply neglects to provide any reasons for entitlement
to fees, seeming to assume that if he is eligible for fees, he
is also entitled to them.  See Reply 6.  Even if plaintiff had
provided some argument for entitlement to fees on the second
disclosure, no substantial public benefit is apparent from that

disclosure.  It involved four Memoranda of Interview that, like
those in the third disclosure discussed below, pertain to
Justice's private complaints to MSHA.  One Memorandum, for
example, referenced a complaint related to the proper labeling
of controls on a piece of mining equipment, but there is no
evidence that the particulars of the complaint had any benefit
or impact on the public, or even beyond that single incident.
Decl. of Jay P. Mattos Ex. 12 at 6.

Without a showing of public benefit, Justice's FOIA
request with respect to the second disclosure appears more akin
to a "substitute for discovery in private litigation" over the
underlying administrative claim.  <u>Young</u>, 1993 WL 305970, at *2.
Such a situation, however, is not one in which a court is to
award fees, and because plaintiff has not met his burden, he
cannot obtain fees with respect to the December 16, 2014
disclosure.

2.   Third Disclosure

As to the third disclosure of the two MOIs,
plaintiff's briefing does at least proffer a piecemeal argument
that there was some benefit from the disclosure.  Plaintiff
suggests as follows: "the redacted MOIs . . . did in fact
include substantially valuable information as anticipated and
sought by Plaintiff. . . .  Those MOIs provided independent

corroboration of the Plaintiff's protected activity."  Reply 4.
Plaintiff states that:

> Mr. Justice also serves as a miners' representative
> under the federal Mine Act, appointed by his coworkers
> to accompany MSHA inspectors on behalf of Mr.
> Justice's fellow workers during safety inspections,
> and to monitor the safety performance of the coal mine
> where Mr. Justice works, pursuant to Sec. 103(f) of
> the Mine Act. <u>See e.g.</u> 30 U.S.C. 813(f). Mr. Justice
> accordingly has an interest in protecting the rights
> not only of himself, but also of the other miners who
> have selected him to represent them under the Mine
> Act.

Resp. 7.

The redacted MOIs total only two pages each, and they
refer to incidents relating to Mr. Justice's underlying
administrative complaint against MSHA.  While the details of
that complaint – since dismissed - are not relevant here, it is
important to note the limited nature of the MOIs.  The only
passage of the MOIs, noted by plaintiff, that is even
potentially publicly beneficial comes from the first MOI
regarding the MSHA interview conducted at 5:45 p.m. on December
3, 2014, involving a "post inspection conference" at which
plaintiff was in attendance.  The interviewee recalled that

> [w]hile talking with management about the day's
> inspection activities [redacted] stated that a
> discussion came up about union employees being
> responsible for scaling top and ribs on the section.
> At that point [redacted] stated Marshall Justice spoke
> up and said something along the lines of, 'I have

22

        never heard that' and a discussion about the work
        description of union men continued.

Notice of Disclosure 8.

        The first MOI is difficult to decipher, and plaintiff
has not provided any explanation of the public benefit behind
the disclosure of the quoted passage.  While the MOIs may
contain "independent corroboration of the Plaintiff's protected
activity" as plaintiff claims, Reply 4, information regarding
plaintiff's specific activities does not confer a public
benefit.  Conversely, the fact, pointed out by plaintiff, that
Mr. Justice is a miner's representative under the Mine Act
suggests that he provides some salutary public benefit by his
contributions at work, but the MOIs themselves are limited to a
discussion of plaintiff's private complaints and not his public
contributions.  The information in the MOI that "union employees
[were] responsible" for certain job tasks does not appear to
benefit the public in any substantial way.  Plaintiff has not
identified "the potential public value of the information
sought" in the MOIs, Davy v. C.I.A., 550 F.3d 1155, 1159 (D.C.
Cir. 2008), and they appear to the court only to concern
plaintiff's private complaints.

        Moreover, aside from their obvious relation to the
underlying action, plaintiff has not explained the nature of his

                                23

interest in these MOIs, how they benefited him privately, or how MSHA did not have at least a "colorable basis" for withholding or redacting certain documents under FOIA exemptions. Aviation Data Serv., 687 F.2d at 1323. Without showing a public or even some significant private benefit, plaintiff cannot demonstrate that he is entitled to attorney's fees by virtue of his litigation over the two inspector MOIs.

Consequently, the court does not need to reach the question of the calculation of fees. Accordingly, the court declines to award plaintiff with attorney's fees.

### III.   Conclusion

For the foregoing reasons, it is ORDERED that plaintiff's petition for attorney's fees and costs be, and it hereby is, denied.

The Clerk is requested to transmit copies of this order to all counsel of record and any unrepresented parties.

DATED:   March 31, 2017

John T. Copenhaver, Jr.
United States District Judge